UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

J.M.C. AND M.E.C., INDIVIDUALLY
AND ON BEHALF OF
THEIR MINOR CHILD, E.G.C.

VERSUS

LOUISIANA BOARD OF ELEMENTARY
AND SECONDARY EDUCATION,
EAST BATON ROUGE PARISH SCHOOL
BOARD, STATE OF LOUISIANA
DEPARTMENT OF EDUCATION, LEE DIXON

CIVIL ACTION

NO. 07-621-JJB-DLD

**RULING ON MOTION TO DISMISS**[1]

This matter is before the Court on a Motion to Dismiss by Defendants East

Baton Rouge Parish School Board and Lee Dixon (herein after "Defendants"). (Doc.

22). Defendants bring this motion under Fed. Rule Civ. P. 12(b)(1). The Plaintiffs,

J.M.C. and M.E.C. individually and on behalf of their minor child, E.G.C., (hereinafter

"Plaintiffs") have filed an opposition memorandum. (Doc. 25). Defendants filed a

---

[1] Since this ruling is replete with acronyms, the Court includes a list below:

- **IDEA**      *Individuals with Disabilities Education Improvement Act*
- **ADA**       *Americans with Disabilities Act*
- **IEP**       *Individualized Education Plan*
- **LDE**       *Louisiana Department of Education*
- **ABA**       *Applied Behavior Analysis*
- **LEA**       *Local Educational Agency* (used interchangeably with EBRPSS)
- **CAP**       *Corrective Action Plan*
- **EBRPSS**    *East Baton Rouge Parish School System*
- **FAPE**      *Free and Appropriate Public Education*
- **LRE**       *Least Restrictive Environment*
- **SEA**       *State Educational Agency* (used interchangeably with LDE)

reply. (Doc. 31).  Plaintiffs were granted leave to file a rebuttal. (Doc. 34).  There is no need for oral argument. Plaintiffs allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## Issues Presented

The central questions this Court considers are: (a) whether Plaintiffs exhausted the administrative remedies of the Individuals with Disabilities Education Improvement Act ("IDEA") before bringing this federal action; (b) whether the terms of the Settlement Agreement confer jurisdiction upon this Court;  or (c) whether under 20 U.S.C. § 1415(f)(1)(B)(iii)— a provision that applies to settlement agreements reached in a "resolution session" after a request for due process, but before the due process hearing— the Plaintiffs even needed to exhaust their administrative remedies.  An analysis of these questions will determine whether this Court has proper jurisdiction over the dispute.

## Factual Background

J.M.C. and M.E.C. moved to East Baton Rouge Parish with their minor child, E.G.C., in April 2003.  E.G.C. is autistic.[2]  Under IDEA, E.G.C. is eligible to receive protection and accommodation as a "child with a disability". 20 U.S.C. § 1402(3)(A). E.G.C. is also a "qualified individual with a disability" under § 504 of the Rehabilitation Act, 29 U.S.C. § 705(20), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2)("ADA").  As such,  in March 2005, authorities determined

---

[2] E.G.C. was diagnosed with autism at the age of two.

that E.G.C. qualified for special education services in the East Baton Rouge Parish School System.

On July 26, 2005, an individualized educational plan ("IEP") was developed for E.G.C. The IEP, as mandated by IDEA, indicated that E.G.C. was eligible for and would receive certain educational services.

On November 14, 2005, E.G.C.'s parents filed a formal complaint with the State of Louisiana Department of Education ("LDE"). The November 2005 complaint specified the areas where the school failed to meet the IEP requirements. It included the allegation that the school district began Applied Behavior Analysis ("ABA") as set forth in the IEP, but such training was not completed by all of the teachers and service providers prior to, during, or after the 2005-06 school year.[3]

On January 18, 2006, the LDE acknowledged receipt of the complaint. It agreed to follow-up with the parents once a determination had been made. The LDE notified the school system that an investigation would be conducted and violations may be found.

On February 8, 2006, the school system requested mediation from the LDE. The mediation did not succeed.

On March 16, 2006, the LDE issued a formal statement addressed to Defendant Dixon in response to the parents' complaint. The findings in the report

---

[3] The Plaintiffs allege that by the time of the formal complaint, E.G.C. exhibited signs of regression, which, in an autistic child can result in permanent loss of skills.

indicated, *inter alia*, that the local educational agency ("LEA")— the East Baton Rouge Parish School System— failed to train teachers within a reasonable time period in accordance with the IEP and the LEA failed to develop a plan for on-going consultation in accordance with the IEP.  The Department's statement also included a Corrective Action Plan ("CAP").

On March 19, 2006, J.M.C. and M.E.C. provided the school system with written notice that they would be removing E.G.C. from school effective March 31, 2006.

In April, 2006, after the District responded to the Department's corrective action plan, J.M.C. and M.E.C. submitted a request for a due process hearing.

On May 26, 2006, the LDE issued the second of two formal statements sent to Dixon regarding compliance issues.  The statement addressed the failure of the school system to comply with the corrective action plan.  The Board of Elementary and Secondary Education ("BESE") placed E.G.C.'s case on the agenda for their May meeting, but the issue was tabled.

In July 2006, J.M.C. and M.E.C. entered into a confidential Settlement Agreement with the school system "as a final attempt" to settle the issues that the IEP, the corrective action plan, and the mediation failed to resolve.[4]

By August 2006, the Plaintiffs allege that they knew the school system could not meet the requirements of the Settlement Agreement; that there was no oversight

---

[4] The confidential Settlement Agreement is placed under seal at doc. 10.

-4-

by the school system, BESE or the LDE to ensure compliance with the Agreement.

In November 2006, then-counsel for the parents notified the school system of multiple violations of the agreement. Following this notification, J.M.C. and M.E.C. withdrew their child from the school system after the 2006 winter break and began home-schooling.

### Defendants' Argument

Defendants contend that Plaintiffs have not exhausted IDEA's administrative remedies, and thus this Court lacks proper subject matter jurisdiction over the dispute.  Defendants argue that IDEA necessitates a due process hearing and a decision rendered by a hearing officer trained and appointed by the Louisiana Department of Education, and that Plaintiffs have not requested such a hearing to challenge the alleged failures of the school district before they brought this action in this Court.

The Defendants further contend that the lack of exhaustion is evident from the facts alleged in the Complaint; that the only request for a due process hearing was submitted by Plaintiffs in April 2006, which was followed by the Settlement Agreement.  The Defendants claim that the Settlement Agreement effected a withdrawal and resolution of the request for a due process hearing because "[p]laintiffs effectively and voluntarily waived any and all claims up to the date of the agreement." (Doc. 22-2 at 3).

## Plaintiffs' Argument

The Plaintiffs argue that they are aware of the exhaustion requirements and have completed every stage of the administrative process in their child's education in the East Baton Rouge Parish School System ("EBRPSS"). They contend that the administrative process began when they filed a complaint with the Louisiana Department of Education for the school system's failure to implement the IEP.

Further, the Plaintiffs argue that as a legal matter and one of practicality, they should not have to again exhaust the administrative process to address the same issues that the Settlement Agreement was created to resolve. Additionally, they allege that the Settlement Agreement contemplated that any disputes arising out of it may be brought in a state or federal court of competent jurisdiction, and that under 20 U.S.C. § 1415(f)(1)(B)(iii), Congress conferred jurisdiction upon federal district courts after a breach of a written settlement agreement.

## Standard of Law

### a.    Subject Matter Jurisdiction

It is axiomatic that a district court may inquire into the basis of its subject matter jurisdiction at any stage of the proceeding either *sua sponte* or when challenged by a party. *Williamson v. Tucker,* 645 F.2d 404 (5th Cir. 1981).

Pursuant to Fed. Rule Civ. P. 12(b)(1), an action may be dismissed if it can be demonstrated that the court lacks jurisdiction over the subject matter of the allegations made therein. There are three separate bases upon which a court has

power to dismiss an action under Rule 12(b)(1): (1) on the complaint alone; (2) on the complaint supplemented by undisputed facts or evidence in the record; or (3) on the complaint supplemented by undisputed facts or evidence in the record plus the Court's resolution of disputed facts. *Barrera-Montenegro v. United States,* 74 F.3d 657 (5th Cir. 1996); *Ynclan v. Department of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989).

If lack of subject matter jurisdiction is challenged on the basis of the face of the complaint itself, then the well-pleaded allegations of fact within the complaint are assumed to be true for that purpose. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512 (5th Cir. 1980); *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). If, however, subject matter jurisdiction is challenged from a factual standpoint, then the court has the right to consider testimony, affidavits, or other evidence outside the pleadings to satisfy itself that subject matter jurisdiction does in fact exist. *Williamson v. Tucker,* 645 F.2d 404 (5th Cir. 1981); *In Re Complaint for Exoneration From or Limitation of Liability of Shell Oil Co.,* 780 F.Supp. 1086 (E.D.La. 1991). In such situations, no presumption of truthfulness attaches to the allegations of the plaintiff's complaint and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. *McLain v. Real Estate Bd. of New Orleans, Inc.*, 583 F.2d 1315, 1325 (5th Cir. 1978), *vacated and remanded on other grounds*, 444 U.S. 232

-7-

(1980).

Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusion will not suffice to prevent a motion to dismiss." *Sandifer v. Lumberton Pub. Sch. Dist.,* 2007 WL 2071799,3 (5th Cir. 2007)(citing *Fernandez-Montez v. Allied Pilots Ass'n.,* 987 F.3d 278, 284 (5th Cir. 1993). Additionally, the plaintiff has the burden of meeting statutory prerequisites for litigating federal claims (such as exhaustion of administrative remedies and compliance with all claims-filing limitations and requirements. *See Hart v. Department of Labor*, 116 F.3d 1338 (10th Cir. 1997)).

### b. IDEA and the Exhaustion of Administrative Remedies

Under the IDEA, school districts receiving federal funds must provide a "free and appropriate public education" ("FAPE") to all special education students in the "least restrictive environment" ("LRE"). *See* 20 U.S.C. § 1412(a)(1),(5); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982). The IDEA provides parents of children with disabilities with an array of procedural safeguards, including the opportunity to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child. 20 U.S.C. § 1415(a) and (b). The IDEA grants the parents of a child with an impairment to have meaningful input into educational decisions that they consider to be inappropriate. *Honig v. Doe*, 484 U.S.

-8-

305, 311-312, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1988).

Any plaintiff seeking relief under the IDEA must first exhaust the Act's administrative remedies before filing a civil action in state or federal court. 20 U.S.C. § 1415(l); 34 C.F.R. § 300.516(e).   The plaintiff must also exhaust IDEA's administrative remedies before filing claims under other civil rights laws, such as Section 504 of the Rehabilitation Act, the ADA, and Section 1983. *Id.*   In Louisiana, parental challenges to the educational decisions must be accompanied through the administrative due process hearing mechanism established by the State of Louisiana pursuant to its authority under IDEA. La. R.S. 17:1952; La.R.S. 17:1941 *et. seq.; La. Bulletin* 1706 § 507.

The Supreme Court, though, has carved out an exception to the exhaustion requirement. *Honig*, 484 U.S. at 327. While judicial review is not normally available until the administrative proceedings have been exhausted, "parents may by-pass the administrative process where exhaustion would be futile or inadequate." *Id.*; *Gardner v. School Bd. Caddo Parish*, 958 F.2d 108.   But, the plaintiff bears the burden of demonstrating the futility or inadequacy of administrative review.   *Id.*

To resolve disputes arising out of the implementation of IDEA requirements, a complainant has two "separate, distinct, and independent remedies" available: (1) the impartial due process hearing procedure ("due process procedure") as set forth at 34 C.F.R. §§300.501 - 300.518; and (2) the state complaint resolution procedure ("state complaint procedure") as set forth at 34 C.F.R. §§300.151-300.153. *Megan*

*C. v. Independent Sch. Dist. No. 625*, 57 F.Supp.2d 776, 780-781 (D.Minn.1999)(discussing in detail the differences between the two procedures). IDEA requires exhaustion of the due process hearing procedures prior to filing for judicial review, while the state complaint procedure, being "different in purpose, scope and procedure," is insufficient to satisfy the exhaustion requirement. *Megan C.*, 57 F.Supp. at 790 (*citing Ass'n. for Comm. Living in Colorado v. Romer, 992 F.2d 1030, 1045 (10th Cir. 1993); Richards v. Fairfax County Sch. Bd., 798 F.Supp. 338, 342 (E.D.Va. 1992); Chrisopher W. v. Portsmouth School Committee, 877 F.2d 1089, 1095 (1st Cir. 1989)*).   The two procedures are summarized below.

## I.    IDEA's Due Process Procedure

The IDEA-mandated due process procedure is implemented in Louisiana by a one-tier due process hearing system, whereby the state's Department of Education and the LEA cooperate to implement the due process hearing procedure.[5] 20 U.S.C. § 1415(g)(1); LA. ADMIN. CODE tit. 28 §§ 501 through 512.  In Louisiana, the specific steps that the plaintiffs were required to follow in exhausting administrative remedies

---

[5] A state may either provide a one-tier or a two-tier due process hearing system.  In a one-tier system, the state educational agency conducts the hearing and renders a decision. *See* 20 U.S.C. § 1415(f)(1)(A).  In a two-tier system, the LEA conducts the hearing in the first instance, and the hearing is conducted by a local hearing officer.  *See* 20 U.S.C. § 1415(g).  If either party is "aggrieved by the findings and decision rendered in such a hearing [it] may appeal such findings and decision to the state educational agency." *See* 20 U.S.C. § 1415(g)(1).  The IDEA provides, as a minimum standard of impartiality, that a hearing officer shall not be "an employee of the State educational agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3)(A)(i)(I).  Under both systems, either party may file an action in state or federal court for review of the state level hearing officer's decision.  20 U.S.C. § 1415(i)(2).

under the IDEA may be summarized as follows:

Step 1:   The parents file a due process hearing request with the East Baton Rouge School System ("the District")(the LEA in this case) or with the Department of Education, which in turn will notice the LEA of the request.  34 C.F.R. § 507; LA. ADMIN. CODE tit. 28, § 507(A).

Step 2:   The parents engage in a resolution process with the District.  34 C.F.R. § 300.510.

Step 3:   The parents and the District participate in an impartial due process hearing before an impartial hearing officer where the parents and school district have the opportunity to call witnesses to testify and enter other evidence into the record, which is transcribed and preserved for review on appeal if necessary following the hearing officer's decision.  34 C.F.R. §§ 507 - 514; LA. ADMIN. CODE tit. 28 §507(B) and (c) and § 608.

Step 4:   Either party may appeal, if desired, the due process hearing decision by filing a civil action in a court— state or federal— of competent jurisdiction.  34 C.F.R. § 300.516; LA. ADMIN. CODE tit. 28, §512.

In the judicial appeal process permitted by Step 4, the IDEA provides that the court:

(i) shall receive the records of the administrative proceedings;
(ii) shall hear additional evidence at the request of a party; and
(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. §1415(i)(2).

ii.   The State Complaint Procedure

As an additional, but optional, method of addressing IDEA complaints, the state complaint procedures were implemented by federal regulations to provide the

state educational agency ("SEA")— here the LDE— with an administrative mechanism for assuring state compliance with the technical aspects of the IDEA and were intended to be distinguished from the IDEA due process procedures. *See* 71 Fed.Reg. 46601 (2006)[6]; *see also Christopher v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 191 n.2 (1st Cir.1989). The federal regulations distinguish between the two procedures. *See* 34 C.F.R. §§300.140, 300.151-153, 300.507. In Louisiana, the state complaint process includes four basic steps:

Step 1:     The parents file a request for an administrative complaint investigation with the LDE. LA. ADMIN. CODE tit. 28 §506(A)(1) and (2).

Step 2:     The LDE reviews and gives notice to the LEA requesting specific information regarding the complaint. LA. ADMIN. CODE tit. 28 §507(A)(3).

Step 3:     The LDE issues a letter of findings and reasons within 60 days. LA. ADMIN. CODE tit. 28 §507(A)(5) and (6).

_____

[6] 71 Fed. Reg. 46601 (2006) states in part:

In addition, a parent always has the right to file a due process complaint and request a due process hearing on any matter concerning the identification, evaluation, or educational placement of his or her child, or the provision of FAPE and may seek to resolve their disputes through mediation. It is important to clarify that when the parent files both a due process complaint and a State complaint on the same issue, the State must set aside any part of the complaint that is being addressed in the due process hearing until the conclusion of the hearing. However, any issue in the complaint that is not a part of the due process hearing must be resolved using the State complaint procedures in § 300.152, including using the time limit and procedures in paragraphs (b) and (d) of § 300.152. (See § 300.152(c)(1)). Under the Act, the decision reached through the due process proceedings is the final decision on those matters, unless a party to the hearing appeals that decision by requesting State-level review, if applicable, or by bringing a civil action in an appropriate State or Federal court.

Step 4:    The LDE ensures effective implementation of the final assistance through technical assistance, negotiations, and corrective actions to achieve compliance with the IDEA. LA. ADMIN. CODE tit. 28 §507(A)(7).

The state complaint procedure is different from the IDEA due process procedure, and courts have held that even if a plaintiff follows every step of the state complaint procedure, its completion would not be sufficient by itself to confer jurisdiction upon a district court or by virtue of the exhaustion requirement. *Megan C.*, 57 F.Supp.2d at 790; *Romer,* 992 F.2d at 1045; *Richards,* 798 F.Supp. at 342; *Christopher W.*, 877 F.2d at 1095.

## Analysis

### a.    Whether the Plaintiffs Exhausted Their Administrative Remedies.

It is clear to this Court that Plaintiffs have not rigidly traveled IDEA's statutory exhaustion route. Yet it has been almost three years since the Plaintiffs began their trek to this day. Since then, their quest to ensure that E.G.C. receives a FAPE under the least restrictive means has been stymied by legal hurdles and bureaucracy at both the state and local level. Currently, E.G.C. receives her education outside of the East Baton Rouge Parish Public School System because the Plaintiffs allege that the school system has failed to implement the IEP. While this Court is not unsympathetic to Plaintiffs' plight, it also recognizes the importance of IDEA's

exhaustion requirement.[7]

The Plaintiffs argue that they "are well-aware of the legislative requirement of exhaustion of administrative remedies prior to filing a civil action in state or federal court." (Doc. 25, p. 1). However, having awareness of the exhaustion requirement and actually exhausting administrative remedies are two different things.

The Plaintiffs contend that the administrative process began when they filed a complaint with the Louisiana Department of Education on November 14, 2005. This is Step 1 in the state complaint procedure, which is not the same as IDEA's due process procedure. The first step in IDEA's due process procedure calls for a request for due process hearing procedure, and this November 2005 complaint did not constitute a request for a due process hearing.

Next, the Plaintiffs argue that the LEA "intercepted the administrative process with a fax request for mediation 'to informally resolve issues raised in the administrative complaint.'" (Doc. 25, p.3).  The mediation did not succeed, and the Plaintiffs allege that in step two of the administrative process, a CAP was instituted,

_____

[7] IDEA's exhaustion doctrine exists because federal courts are generalists, with no particular expertise in the specific educational needs of special needs students.  Exhaustion allows students and parents "the benefit of expert factfinding by a state agency devoted to" the very purpose of ensuring a FAPE.  *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't. of Educ.*, 2007 WL 2219352, 9 (W.D.Mich. 2007) *citing Crocker v. Tenn. Secondary Sch. Athletic Ass'n.* 873 F.2d 933, 935 (6th Cir. 1989).  "The IDEA's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies." *Marc V. v. North East Ind. Sch. Dist.*, 455 F.Supp.2d 577, 592 (W.D. Tex. 2006) *aff'd*, 242 Fed. Appx. 271 (5th Cir. 2007).

the requirements of which were not met by the LEA.

The Plaintiffs proffer that the third step in the administrative process arrived with an April 26, 2006 Request for Due Process to the LDE. This letter constituted the first request for a due process hearing.[8]  A hearing was set for June 26-28, 2006, but on May 5, 2006, the LDE issued to Lee Dixon the second of two formal statements regarding IEP compliance issues.  On June 6, 2006, the school board notified the Plaintiffs that, though it did not agree with the findings of fact or the conclusions of the LDE, it would implement the CAP "to the extent practicable at this time." (Doc. 25, p. 5).

The Plaintiffs next allege that the School System "intercepted the administrative procedure yet again by offering the plaintiffs a settlement on June 26, 2006."  The Plaintiffs accepted the settlement and signed the Settlement Agreement in July 2006.

The Plaintiffs argue that they strictly adhered to the administrative process. The Court however finds that the Plaintiffs' steps outlined above quite clearly do not mirror those set forth under the IDEA.[9]

---

[8]*See* doc. 25-2, Exh. G. This April 26, 2006 letter from Kathleen Hobson to Lee Dixon at EBRPSS is the first request for a due process hearing.

[9] Curiously, the Plaintiffs argue that it would be futile for them to exhaust IDEA's administrative remedies.  They also argue  that they have exhausted IDEA's administrative remedies.  The propositions appear to be mutually exclusive.  The Court notes that Plaintiffs acknowledge that they oppose "the proposition that they go through the identical process again," and that they are not seeking to by-pass administrative remedies.  However, the administrative process that the Plaintiffs have undergone thus far does not fall in line with the IDEA statutory exhaustion scheme.   Thus, the Court will not enter into an analysis of whether it

**b.    Whether the Settlement Agreement, by its terms, Sufficiently Confers Jurisdiction Upon This Court.**

The Plaintiffs contend that the due process procedure does not apply because of a particular provision in the Settlement Agreement. This Court does not find merit to that argument. The Plaintiffs argue that the following clause in the Settlement Agreement confers jurisdiction upon this Court because,

> any and all disputes that may arise regarding substantive compliance with [the] Agreement shall be addressed by and between counsel of record for the Parents and special counsel of record for the School Board. ***If said counsel are unable to amicably resolve any dispute, then either party may bring an action in a state or federal court of competent jurisdiction to enforce the terms and provisions of [the] Agreement.*** Each party shall bear their/its own costs (including attorney's fees) during the efforts of counsel to amicably resolve disputes and any litigation which might be filed to enforce this agreement.

Settlement Agreement, filed under seal at doc. 10, p. 6. (emphasis added).

Recently district courts and appeals courts in different circuits have held that, where a plaintiff claims that a school district's violation of the IDEA constitutes a breach of the parties' settlement agreement, the exhaustion rule applies. *See Traverse Bay Area Intermediate Sch. Dist.,* 2007 WL 2219352, 9 *citing J.P. v. Cherokee County Bd. of Educ.,* 218 F.App'x 911, 913-14 (11th Cir. 2007).

As such, the language in the Settlement Agreement averring that an action may be brought "in a state or federal court of competent jurisdiction" suggests to this

---

would be futile in this case for the Plaintiffs to exhaust their administrative remedies.

Court that both parties contemplated the jurisdictional requirements.[10] In other words, a court is not competent to hear a case if it lacks jurisdiction. Under the IDEA (the Act under which this case is brought), a federal district court has the authority entertain an action if the plaintiff has exhausted his or her administrative remedies. Thus, the terms of the Settlement Agreement coupled with case law suggest that unless and until the Plaintiffs have exhausted their administrative remedies, this Court is not one of competent jurisdiction.

c.   **Whether 20 U.S.C. § 1415(f)(1)(B)(iii) applies to this Settlement Agreement.**

The Plaintiffs contend that this "claim is not about exhaustion," but rather "it is about a breach of the settlement agreement." (Doc. 25, p. 10).  In support of this, the Plaintiffs direct the Court to 20 U.S.C. § 1415 (f)(1)(B)(iii), which states:

> (f) Impartial due process hearing
> (1) In general
> (B) Resolution session
> (iii) Written settlement agreement
> In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i), the parties shall execute a legally binding agreement that is--
>
> (I) signed by both the parent and a representative of the agency who has the authority to bind such agency; and
> *(II) enforceable in any State court of competent jurisdiction or in a district court of the United States.*

---

[10] The Court recognizes that to engage in interpretation of the Settlement Agreement would invoke state law.  Thus, the Court limits its inquiry to the plain meaning of the above provision.

(emphasis added).  This provision did not exist prior to IDEA's 2004 amendments.

Indeed, the emphasized statutory language indicates that certain written settlement

agreements should be "enforceable in any State court of competent jurisdiction or

in a district court of the United States." The question next becomes whether the

Settlement Agreement here is the type contemplated by the provision.  The Plaintiffs

contend that it is, but they do so without pointing to any case law or analysis in

support of their proposition.  To answer this question, this Court begins its inquiry by

applying the statutory language of 20 U.S.C. § 1415(f)(A) and (B)[11] to

--------------------------------------

[11](f) Impartial due process hearing
    (1) In general
        (A) Hearing
            Whenever a complaint has been received under subsection (b)(6) or (k)
            of this section, the parents or the local educational agency involved in
            such complaint shall have an opportunity for an impartial due process
            hearing, which shall be conducted by the State educational agency or by
            the local educational agency, as determined by State law or by the State
            educational agency.
        (B) Resolution session
            (i) Preliminary meeting
            Prior to the opportunity for an impartial due process hearing under
            subparagraph (A), the local educational agency shall convene a meeting
            with the parents and the relevant member or members of the IEP Team
            who have specific knowledge of the facts identified in the complaint--
                (I) within 15 days of receiving notice of the parents' complaint;
                (II) which shall include a representative of the agency who has
                decisionmaking authority on behalf of such agency;
                (III) which may not include an attorney of the local educational
                agency unless the parent is accompanied by an attorney; and
                (IV) where the parents of the child discuss their complaint, and
                the facts that form the basis of the complaint, and the local
                educational agency is provided the opportunity to resolve the
                complaint,
                    unless the parents and the local educational agency
                    agree in writing to waive such meeting, or agree to use

the facts of this case.[12]

First, on April 28, 2006, the Plaintiffs sent a letter, via fax, to both EBRPSS and the LDE requesting due process pursuant to 20 U.S.C. § 1415. After the complaint was received, a hearing was set for June 26-28, 2006. 20 U.S.C. § 1415(A). The next step, following receipt of the complaint and the date of the hearing, was to enter a resolution period. 20 U.S.C. § 1415(B). During this "resolution session," a "preliminary meeting" should have been convened by the LEA, bringing the LEA, the parents and the IEP team together "within 15 days of receiving notice of the parents complaint." 20 U.S.C. § 1415(B)(i)(I). It is not clear to this Court that such a meeting ever took place. Based on the facts, the parties did not meet, but rather exchanged correspondence between May 5, 2006 and June 26,

--------

the mediation process described in subsection (e) of this section.
(ii) Hearing
If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence.
(iii) Written settlement agreement
In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i), the parties shall execute a legally binding agreement that is--
(I) signed by both the parent and a representative of the agency who has the authority to bind such agency; and
(II) enforceable in any State court of competent jurisdiction or in a district court of the United States.

[12] The Court notes that Section 1415(e), which pertains to mediation, does not apply to this case. Section 1415(e) contains similar language to 1415(f) and enables federal courts to power to enforce mediated settlement agreements. The Settlement Agreement at issue in this case did not arise through a formal mediation scheme as set out in 1415(e).

2006.[13]

It is not clear to this Court that the Settlement Agreement at issue in this case was entered into at a "preliminary meeting" comporting with the criteria described in §1415(f)(1)(B)(i).  The Plaintiffs have not directed this Court to any evidence tending toward a preliminary meeting that took place within 15 days of receipt of the complaint.  The statutory language of § 1415(f)(1)(B)(iii) is clear.  The types of written settlement agreements which fall under this provision are ones resolved "at a meeting described in clause (i)." *Id.*

However, it is up to the LEA— here, EBRPSS— to convene such a meeting. § 1415(f)(1)(B)(i).  EBRPSS did not do so in this case. EBRPSS, on the day of the due process hearing— June 26, 2006— offered a settlement. Now they seek to have this matter dismissed on the theory that this Court does not have jurisdiction because Plaintiffs have not exhausted their administrative remedies.  EBRPSS did not adhere to the statutory timetable for resolving this dispute because they did not

—————————————

[13] After the April 2006 request for due process, and the scheduling of the hearing date set for June 26-28, 2006, the following communication took place: On May 5, 2006, the LDE issued to Lee Dixon the second of two form statements regarding IEP compliance issues. (Exh. H).  On June 6, 2006, EBRBSS faxed a letter to Plaintiffs' counsel stating that although it "did not agree with the findings of fact or the conclusions reached by the Department of Education in the March 16, 2006 letter from L. Adrienne Dupont, it has decided to implement the corrective action plan (CAP) to the extent practicable at this time." (Exh. I).  On June 14, 2006, EBRPSS sent a letter to L. Adrienne Dupont which was intended "to serve as a process report highlighting the efforts made by [EBRPSS] to comply with the [CAP] ordered by your office by letter dated March 16, 2006 (Exh. J).  On June 26, 2006, the date of the scheduled due process hearing, EBRPSS offered plaintiffs a settlement.  The Settlement Agreement was evidenced by the parents' signatures on July 3, 2006 and by Lee Dixon's signature on July 13, 2006.  *See* doc. 25 p. 5.

convene a "preliminary meeting" within 15 days of receiving the complaint.

Additionally, the Defendants concede that "the issues raised by the April 2006 due process hearing request *were effectively resolved by the settlement agreement*." *See* doc 22-2, p. 3 (emphasis added).   The Court finds that the Plaintiffs were often at the whim of EBRPSS.  The Court also finds that EBRPSS offered a settlement before the due process hearing commenced, thereby terminating the need for the due process hearing.

The Court finds it curious that the Defendants attempt to dismiss this case by alleging procedural failures on the part of the Plaintiffs when they themselves have not strictly adhered to the statutory scheme set out to resolve a matter prior to a due process hearing.

However, Congress intended that "written settlement agreements reached during the mediation process or in a resolution session which comply with the statutory requirements are now enforceable in state and federal courts." *See Traverse Bay Area Intermediate School Dist*, 2007 WL 2219352, 7.   While Congress did not likely intend that *all* settlement agreements reached during the course of the administrative process be enforceable in federal court, it also did not likely intend for a party to use his or her own procedural failure as a shield to prevent a court from enforcing the terms of an IDEA settlement agreement.

## CONCLUSION

Accordingly, the Defendants' Motion to Dismiss pursuant to Fed. Rule Civ. P.

12(b)(1) is hereby **DENIED**.  Although Plaintiffs did not exhaust their administrative remedies, and the provision at issue in the Settlement Agreement is insufficient to confer jurisdiction upon this Court, The Settlement Agreement is enforceable pursuant to 20 U.S.C. § 1415(f)(1)(B)(iii).

Baton Rouge, Louisiana.  June _____, 2008.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA